**Susan P. (Gerhart) PELLISH, Appellee**

v.

**Guy H. GERHART, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 11, 1997.

Filed Oct. 30, 1997.

Richard D. Gearhart, Clearfield, for appellant.

Barbara H. Schickling, Clearfield, for appellee.

Before POPOVICH, SAYLOR and OLSZEWSKI, JJ.

POPOVICH, Judge.

This is an appeal from the lower court's Order dated October 30, 1996, granting Mother's petition for modification of a child support order. The lower court's order required Father, the non-custodial parent, to contribute to the expense of his minor child's private school tuition. Herein, Father contends that the lower court erred in requiring him to contribute to the child's tuition since the order violated our supreme court's holding in *Curtis v. Kline*, 542 Pa. 249, 666 A.2d 265 (1995). In the alternative, Father contends that Mother failed to establish that the expense was reasonable under Pennsylvania Rule of Civil Procedure 1910.16–5(*l*).[1] We affirm.

Mother and Father were divorced by decree dated April 11, 1986. Pursuant to a property settlement agreement which was incorporated into the divorce decree, Mother was awarded primary physical and legal custody of Jonathan, the parties' minor child, and Father promised to pay $300 per week for his support.[2] On September 27, 1995, Mother filed a petition for modification of child support. Therein, Mother contended that modification was necessary since Jonathan was removed from a public school and enrolled in a private school.[3] On February 20, 1996, Father filed a motion to dismiss Mother's petition. In his motion, Father alleged that pursuant to *Curtis, supra,* it was unconstitutional for the lower court to require him to contribute to his child's private education and that such a contribution was not warranted under Pa.R.Civ.P.1910.16–5(*l*). Following a hearing on the matter, the lower court granted Mother's petition and ordered Father to contribute to Jonathan's private education. This timely appeal followed.

■ Father contends that *Curtis* prohibited the lower court from requiring him to contribute to his minor child's private edu-

---

1. 42 Pa.C.S.A. § 1910.16–5(*l*), Pa.R.Civ.P.

2. We note that the parties are the parents of another child, Lorne, who reached the age of majority prior to the parties' divorce and who is not a subject of this appeal.

3. Jonathan attended private school during the 1995–1996 school year. The tuition was covered, in part, by a scholarship. Mother paid the remaining expenses out of her own pocket. No scholarships were available for the 1996–1997 school year, and this prompted Mother to file a petition seeking contribution from Father.

cation.[4] In *Curtis,* our supreme court determined that it was unconstitutional for the legislature to require divorced parents to provide for the post-secondary educational support of their adult children.[5] Specifically, our supreme court determined that such a requirement violated the equal protection clause of the Fourteenth Amendment. However, *Curtis* did not hold, or even suggest, that it was unconstitutional for the legislature to require divorced parents to provide for their minor child's private school education. Father asks us to extend *Curtis* and find that there is no constitutional difference between requiring divorced parents to provide an education for their minor or adult child. This we decline to do. Contrary to Father's claim, in this jurisdiction, the duty of parents to support a child who has reached the age of majority is different from the parental obligation with respect to a minor child. *See Litmans v. Litmans,* 449 Pa.Super. 209, 673 A.2d 382 (1996). With regard to education, as discussed previously, divorced parents have no duty to provide for their adult child's college education. *Curtis, supra.* However, case law and statutory authority establish that divorced parents have a duty to provide for their minor child's private school education as long as such an education is a reasonable expense. *Litmans, supra;* 42 Pa.C.S.A. § 1910.16–5(*l*).[6] *Curtis* did not alter this well-established body of law. Accordingly, we find that *Curtis* did not prohibit the lower court from requiring Father to contribute to his minor child's private school tuition.

■ However, this does not end our inquiry. Father contends that even if the lower court's order did not violate *Curtis,* we must find that private schooling was not one of Jonathan's "reasonable needs" under Rule 1910.16–5(*l*).

> A private school education may be a reasonable need for a child if it is demonstrated that the child will benefit from such and if private schooling is consistent with the family's standard of living and station in life before the separation. If these factors are proved, a court may order a parent to provide financial support for the private schooling of a minor child.

*Litmans,* 673 A.2d at 395 (citations omitted).

Here, it is clear that Jonathan will benefit if he continues to attend private school.[7] The evidence revealed that while Jonathan attended public school he was harassed verbally and physically by his classmates. On numerous occasions, Jonathan's classmates pushed him into a locker, threw him down a flight of stairs and pushed him into the mud. N.T. 10/24/96 pp. 25, 92. He also experienced an incident where two boys attempted to dunk his head in a filthy toilet. N.T. 10/24/96 p. 24. Jonathan testified that he felt depressed, isolated, frightened and defensive while attending public school and that he felt "run down" by the end of the day. N.T. 10/24/96 pp. 65–66. He also experienced several asthma attacks which were aggravated by the stress associated with his situation. N.T. 10/24/96 p. 23. He testified that his grades were good while he attended public school. However, he never joined any extracurricular activities because they were all athletic in nature. N.T. 10/24/96 pp. 78, 83.

4. In *Calabrese v. Calabrese,* 452 Pa.Super. 497, 682 A.2d 393 (1996), we held that an analysis under *Curtis* is appropriate where the lower court's order was entered after the filing of *Curtis. Curtis* was filed on October 10, 1995, and the lower court's order was entered on October 30, 1996. Accordingly, we are permitted to determine whether *Curtis* provides relief for Father in this case.

5. Our supreme court's holding in *Curtis* overruled Act 62 of 1993 which required divorced parents to provide for the post-secondary educational support of their adult children.

6. Section 1910.16–5(*l*) provides that:
The support grids do not take into consideration expenditures for private school tuition, summer camp or other needs of a child which are not specifically addressed by the guidelines. If the trier of fact determines that one or more such needs are reasonable, the expense thereof shall be borne by the parties in reasonable shares.
42 Pa.C.S.A. § 1910.16–5(*l*), Pa.R.Civ.P. The statute was amended on August 3, 1995, effective January 1, 1996. However, the amendment is inapplicable since Mother's petition was filed on September 27, 1995.

7. As discussed previously, Jonathan attended private school for approximately one year before Mother filed her petition.

He also had very few friends. N.T. 10/24/96 p. 83.

Jonathan's experience while attending private school appears to be much different than his public school experience. Jonathan testified that he enjoys attending private school and that he is no longer harassed. N.T. 10/24/96 p. 66. Mother testified that Jonathan's asthma has improved greatly since he began attending private school, that he has joined numerous extracurricular activities and that he has made numerous friends. N.T. 10/24/96 p. 40. She indicated that since Jonathan has been attending private school he is an "active, excited, bright student." N.T. 10/24/96 p. 40. Dr. Howard B. Bean, a psychologist who examined Jonathan, testified that it would be "disastrous" for Jonathan to return to public school. Bean's Deposition 8/23/96 p. 3. Specifically, he testified that he believed that Jonathan's mental and physical well-being would suffer. Bean's Deposition 8/23/96 p. 3. He testified that it was essential for children to have friends, interact socially and feel comfortable while attending school. He opined that if Jonathan returned to public school he would lose his self-confidence and he would not be challenged academically.[8] He noted that Jonathan was extremely bright with an Intelligence Quotient (IQ) in the 130–140 range,[9] and that the private school offered more gifted programs than the public school. Bean's Deposition 8/23/96 p. 3. Based on the aforementioned, we cannot find that the lower court abused its discretion in finding that Jonathan will benefit by remaining in private school.

We also find that the lower court did not err in concluding that private schooling for Jonathan is consistent with the family's standard of living and station in life before the parties' separation. Prior to the separation, Lorne, the parties' other child who was a minor at the time, transferred from a public school to a private school when he experi-enced difficulties at school. N.T. 10/24/96 p. 47. He also attended a preparatory school during the summer and an exclusive camp in Cody, Wyoming. N.T. 10/24/96 p. 47. The parties expended several thousand of dollars to enable Lorne to attend private school, preparatory school and summer camp. N.T. 10/24/96 p. 47. It is consistent for the lower court to require Father to do the same for Jonathan in this case.

Order affirmed.

---

8. We note that Father argues that private school was not a reasonable expense since Jonathan performed well academically while attending public school. We disagree. Aside from the fact that the child has benefited socially, mentally and physically by transferring to private school, Dr. Bean testified that if Jonathan returned to public school his grades would be impacted negatively.

9. Dr. Bean testified that an individual with an IQ in the 130–140 range is intellectually located in the top one-half of one percent of the American people. Bean's Deposition 8/23/96 p. 3.